IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Quincy C. Daniels, on behalf of himself and others similarly situated, | : : : | Case No. 1:15-cv-507 |
| Plaintiff, | : : | Judge Susan J. Dlott |
| v. | : : | Order Granting in Part and Denying in Part Defendants' Motion to Dismiss |
| City of Wyoming, *et al.*, | : : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss Amended Class Action Complaint (Doc. 12).  Plaintiff Quincy C. Daniels filed this suit on behalf of himself and a prospective class alleging racial profiling by Wyoming, Ohio police officers.  However, Daniels's class allegations are insufficient as a matter of law and Daniels has pleaded only one claim upon which relief can be granted against only one police officer.  Accordingly, the Court will **GRANT IN PART AND DENY IN PART** the Motion to Dismiss.

**I.      BACKGROUND**

**A.      Facts Alleged**

Well-pleaded allegations of fact in the Amended Class Action Complaint (Doc. 9) are taken as true for purposes of the Motion to Dismiss.  Plaintiff Daniels is an African-American resident of Butler County, Ohio.  (*Id.* at PageID 84.)  On December 26, 2013, Daniels was pulled over "for no reason" while driving a 2014 Cadillac with dealer plates on Springfield Pike in Wyoming, Ohio by Officer Tom Riggs of the Wyoming Police Department ("WPD").  (*Id.* at PageID 85–86.)  Before initiating the traffic stop, Officer Riggs followed behind Daniels's vehicle for approximately one mile "and then got on the passenger side of Daniels' vehicle whereby looking to see who was inside of Daniels' vehicle."  (*Id.* at PageID 86.)  Officer Riggs

1

then pulled over Daniels's vehicle, questioned Daniels about the vehicle and the dealer plates, and asked to see his driver's license. Officer Riggs did not issue Daniels a citation "because [he] had] not commit[ted] a traffic offense." (*Id.*)

Daniels did not file a complaint with the WPD regarding this traffic stop because of an incident that had occurred approximately two weeks earlier on December 15, 2013. (*Id.*) Daniels asserts that he had been assaulted by an unnamed person in front of WPD Officer Mike World on an unspecified date, but that Officer World would not permit him to file a complaint about the assault against the assailant or Officer World himself. (*Id.*) Daniels telephoned WPD Chief Baldauf on the same date and left a message, but he did not speak to Chief Baldauf. (*Id.*) Daniels asserts that he "has suffered psychological damage" and that "there is an increased risk of future harm to him[]," apparently as a result of these two incidents. (*Id.* at PageID 86–87.)

Daniels also alleges that two other individuals were subjected to racial profiling by WPD police officers. First, on February 28, 2015, Nico L. Jenkins, who is black, was issued a citation "for menacing and [for an] unleashed dog" by Officer Jeffrey Banker. (*Id.* at PageID 87.) She was threatened by Officer Banker that she would be arrested if she did not go to the police station, but was denied the opportunity "to tell her side of the story" at the station. (*Id.*) The menacing charge was dismissed. (*Id.*) Second, on April 4, 2015, Damien Lee Johnson was stopped while driving, but not issued a citation, by Officer Brian Berigan "for no apparent reason other than race." (*Id.*)

Finally, Daniels alleges that the WPD "issued a relatively high number of traffic citations on a two mile stretch, [*sic*] to a relatively high number of non whites and have [*sic*] gained great wealth from non whites as a result of these citations." (*Id.*)

**B.     Procedural Posture**

Daniels initiated this suit on July 31, 2015 against the City of Wyoming, Ohio; Lynn Tetley, the Wyoming City Manager; the Wyoming Police Department; and Chief Gary Baldauf, Officer Tom Riggs, Officer Mike World, Officer Brian Berigan, and Officer Jeffrey Banker of the Police Department.  (Doc. 1.)  He filed the Amended Class Action Complaint on September 3, 2015 after Defendants had moved to dismiss the initial Complaint.  (Docs. 8, 9.)  Daniels asserts the claims against the individual defendants in both their official and individual capacities.  (Doc. 9 at PageID 84.)  The official capacity claims and the claims against the WPD are treated as claims against the municipality itself.

Daniels purports to bring suit on behalf of himself and a class of "non whites ie. [*sic*] Hispanics and African-American[s] stopped *and* cited *or* not cited" by the WPD "because of their ethnicity."  (*Id.* at PageID 84–85 (emphasis in the original).)  He alleges that there are "approximately 1500 people in a two year period" in the proposed class.  (*Id.* at PageID 89.)  Daniels expressly asserts five causes of action:

> (1) A 42 U.S.C. § 1983 claim for unlawful stop, detention, and interrogation in violation of the Fourth and Fourteenth Amendments to the Constitution against all Defendants;
>
> (2) A 42 U.S.C. § 1983 claim for failure to train, instruct, or supervise in violation of the Fourth and Fourteenth Amendments against the City of Wyoming, City Manager Tetley, and Chief Baldauf;
>
> (3) A 42 U.S.C. § 1983 claim for denial of substantive due process in violation of the Fourteenth Amendment against all Defendants;
>
> (4) A 42 U.S.C. § 1983 claim for denial of procedural due process in violation of the Fourteenth Amendment against all Defendants; and
>
> (5) A claim for intentional infliction of emotional distress under Ohio common law against all Defendants.

3

(*Id.* at PageID 87–89.)  The Court will assume that Daniels also intended to assert an equal protection claim because he alleges that Defendants stopped or detained him and the prospective class members on the basis of their race.  (*Id.* at PageID 84–87.)

On September 17, 2015, Defendants moved to dismiss the Amended Class Action Complaint.  On October 6, 2015, Daniels filed his Response to Defendant's Motion to Dismiss.  (Doc. 14.)  He attempted to bolster that Response by filing a Second Amended Class Action Complaint with affidavits and a deposition transcript in support.  (Docs. 13–18.)  When Defendants objected that Daniels had not secured Defendants' written consent or leave of the Court to amend as required by Fed. R. Civ. P. 15(a)(1)(B), Daniels moved to withdraw the pleading.  (Docs. 20, 22.)  The Court struck the Second Amended Class Action Complaint and the evidentiary support.  (Doc. 23.)

The Court held the preliminary pretrial conference on November 30, 2015.  Plaintiff Daniels's legal counsel failed to appear as required.  The Court determined to first resolve the pending Motion to Dismiss and then, if necessary, issue a case management scheduling order.

## II. STANDARDS GOVERNING MOTIONS TO DISMISS

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A district court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions and legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and

4

conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

Defendants move to dismiss the Amended Class Action Complaint arguing that Daniels lacks standing, has failed to state a claim for violation of his constitutional rights, and has failed to plead sufficient allegations to warrant class status.

### A. Standing

The Court will begin by examining standing. Article III, § 2 of the United States Constitution limits the federal judicial power to the adjudication of cases and controversies. One component of the case-or-controversy requirement is standing, which requires the plaintiff to prove an injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). Defendants assert that Daniels has not pleaded an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted); *see also Doe v. DeWine*, 99 F. Supp. 3d 809, 820–21 (S.D. Ohio 2015)

(quoting *Lujan*).

Defendants reduce Daniels's constitutional claims to the allegation that he suffered "psychological harm and increased risk of future harm" after the December 2013 incidents with the WPD. Defendants argue that an allegation of psychological harm is insufficiently concrete to provide a basis for standing. However, the Court disagrees with Defendants' characterization of Daniels's claims.

Daniels asserts that he was subjected to a traffic stop without legal justification. "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *U.S. v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). A police officer may stop a car with probable cause to believe a civil traffic infraction has occurred or with reasonable suspicion of ongoing criminal activity. *Id.* at 748, 750; *see also U.S. v. Huff*, No. 12-5581, —F. App'x—, 2015 WL 6743477, at *22 (6th Cir. Nov. 4, 2015) (Barrett, J., concurring).[1] Daniels has pleaded that Officer Riggs stopped him without legal justification, as evidenced by the fact that Officer Riggs did not issue him a traffic citation. It remains to be seen whether Daniels can support these allegations with evidence. Nonetheless, these allegations are sufficient to allege a constitutional injury under the Fourth Amendment. *See U.S. v. Torres-Ramos*, 536 F.3d 542, 549 n.5 (6th Cir. 2008) (stating that drivers and passengers have standing to challenge a traffic stop). The Court will not dismiss the Amended Class Action Complaint for lack of standing.

**B.    Failure to Plead Class Allegations**

Defendants next argue that Daniels has failed to sufficiently plead class allegations in accordance with the dictates of Fed. R. Civ. P. 8 and S.D. Loc. R. 23.2. Although Fed. R. Civ. P.

---

[1] "Whether the police may stop a vehicle based on mere reasonable suspicion of a civil traffic violation is the subject of a conflict in our [Sixth Circuit] case law." *Blair*, 524 F.3d at 753.

6

8(a)(2) requires only a "short and plain statement of the statement of the claim[,]" the Local Rule has more specific requirements:

> A complaint or other pleading asserting a class action shall contain sufficient allegations to identify the class and the claim as a class action, including, but not limited to:
>
> (a) The approximate size and definition of the alleged class;
>
> (b) The basis upon which the party or parties maintaining the class action or other parties claimed to be representing the class are alleged to be adequate representatives of the class;
>
> (c) The alleged questions of law and fact claimed to be common to the class;
>
> (d) The grounds upon which it is alleged that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (e) Allegations intended to support findings required by the respective subsections of Fed. R. Civ. P. 23(b)(1), (2), or (3).

S.D. Ohio Loc. R. 23.2. Fed. R. Civ. P. 23(d)(1)(D) gives the Court authority to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

Courts in the Sixth Circuit have adjudicated motions to strike class allegations prior to discovery or the filing of the motion to certify when the allegations are facially inadequate. *See e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *9 (M.D. Tenn. Mar. 24, 2010); *but see Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) ("An order under Rule 23(d)(1)(D) is used after the class determination under Rule (c)(1)(A).") In this case, discovery is not necessary to determine that Daniels has failed to sufficiently plead the class action requirements in several respects.

To begin, Daniel's proposed class is not readily ascertainable.  A class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (quoting 5 James W. Moore *et al.*, *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).  Daniels seeks to certify a class of "non whites ie. [*sic*] Hispanics and African-American[s] stopped *and* cited *or* not cited" by the WPD "because of their ethnicity."  (Doc. 9 at PageID 84–85 (emphasis in the original).)  Courts ordinarily do not certify classes based on subjective criteria such as a defendant's intent or the class member's belief that he or she was racially profiled.  *See Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 WL 3397501, at *5 (S.D. Ohio Aug. 25, 2010); William B. Rubenstein, *Newberg on Class Actions*, § 3:5 (5th ed.).  Additionally, courts ordinarily do not certify classes if membership can be ascertained only as part of a merits determination, such as a determination about a police officer's motivations.  *Young*, 693 F.3d at 538; *Newberg on Class Actions*, § 3:4.

Also, Daniels asserts that the prospective class has approximately 1,500 members, but he does not provide facts explaining how he derived that number.  Although the Court assumes that the City of Wyoming maintains records regarding citations issued, the Court does not know of an objective method by which the Court or the parties could identify prospective class members who were stopped but not issued a citation on the basis of their race.[2]

Daniels also fails to state allegations that satisfy the commonality and typicality requirements of Rule 23(a).  The dissimilarity between the alleged incidents of racial profiling is telling.  A different officer was involved in each of the three incidents.  Daniels, an African-

---

[2] Fed. R. Civ. P. 23(b)(2) classes for injunctive or declaratory relief are designed for "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."  Fed. R. Civ. P. 23, Advisory Committee Note 1966.  However, Daniels seeks to certify a class only pursuant to Fed. R. Civ. P. 23(b)(1).  (Doc. 9 at PageID 90.)

American, was subjected to a traffic stop by Officer Riggs in December 2013.  Daniels specifically pleads that Officer Riggs pulled alongside his vehicle to see who was inside before initiating the traffic stop.  Officer Berigan subjected Johnson to a traffic stop fourteen months later, but Daniels does not plead the race of Johnson nor facts indicating that Officer Berigan knew Johnson's race when he stopped his vehicle.  Jenkins was not subjected to a traffic stop at all, but rather was detained and issued a citation for her unleashed dog.

Daniels has not pleaded facts that would establish a common thread between the three incidents.  Two traffic stops happening fourteen months apart simply are too remote in time to suggest that a custom or policy of racial profiling exists.  Daniels alleges that the WPD officers issued a "relatively high number of traffic citations" to a "relatively high number of non whites[,]" but the allegation is too vague and conclusory to serve as a link between the separate incidents.  The Amended Class Action Complaint is otherwise devoid of statistical evidence of racial profiling.   The Court concludes that the allegations pleaded do not give rise to a common contention of fact or law the answer to which is subject to classwide determination.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (on commonality).

Accordingly, the class allegations should be stricken from the Amended Class Action Complaint.  The Court orders Daniels to file a Second Amended Complaint without the class allegations within three weeks of the date of this Order pursuant to Fed. R. Civ. P. 23(d)(1)(D).

**C.**     **Failure to State a Valid Claim**

Section 1983 creates a private cause of action for violations of rights secured by the federal Constitution and committed by persons acting under the color of state law.  42 U.S.C. § 1983.  To determine whether a plaintiff has stated § 1983 claims upon which relief can be

granted, a district court must assess each defendant's liability separately based on his own actions. *Dorsey v. Barber*, 517 F.3d 389, 399 n. 4 (6th Cir. 2008).

To begin, Daniels has stated a claim for violation of his Fourth Amendment rights. A traffic stop by a police officer without legal justification constitutes a violation of the Fourth Amendment. *Blair*, 524 F.3d at 748, 750. Daniels can assert this claim, however, solely against Officer Riggs. He does not allege that any other Defendant participated in, authorized, or approved the traffic stop.

Turning to the due process claims, it is unclear in what manner Daniels is asserting that his procedural or substantive due process rights have been violated. A claim for unlawful seizure or detention pursuant to an ordinary traffic stop is analyzed under the rubric of the Fourth Amendment, not as a due process claim under the Fourteenth Amendment. *See Estate of George v. Mich.*, 63 F. App'x 208, 211–12 (6th Cir. 2003). Daniels uses only boilerplate language to describe the due process claims, such as alleging that Defendants' conduct "was shocking to the conscience and outrageous." (Doc. 9 at PageID 88–89.) He does not identify the theory of a due process violation, or the facts supporting such a claim, in either the Amended Class Action Complaint or in the Response to the Motion to Dismiss. The Court cannot create due process claims from whole cloth for Daniels. Accordingly, the Court will dismiss these claims pursuant to Rule 12(b)(6).

Next, the Court is assuming that Daniels intended to assert a racial profiling claim for violation of his rights under the Equal Protection Clause. Unlike for a Fourth Amendment claim, an officer's motivations are relevant to an equal protection claim under the Fourteenth Amendment. *Cunningham v. Sisk*, 136 F. App'x 771, 774 (6th Cir. 2005). "The Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*,

517 U.S. 806, 813 (1996). "The Fourteenth Amendment protects citizens from police action . . . based solely on impermissible racial considerations." *U.S. v. Avery*, 137 F.3d 343, 353 (6th Cir. 1997). Individuals "subjected to unequal treatment based upon their race or ethnicity during the course of an otherwise lawful traffic stop . . . [can] demonstrate a violation of the Equal Protection Clause." *Farm Labor Organizing Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533 (6th Cir. 2002). A plaintiff alleging discriminatory enforcement of the law must demonstrate discriminatory effect and discriminatory purpose. *Id.* at 533–34. "To establish discriminatory effect in a race case, the [plaintiff] must show that similarly situated individuals of a different race were not prosecuted or [subjected to traffic stops]." *Id.* at 534 (quoting *U.S. v. Armstrong,* 517 U.S. 456, 465 (1996)); *see also Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (calling disparate treatment the threshold element of an equal protection claim).

Defendants argue that Daniels has not pleaded an equal protection claim because he does not allege that Officer Riggs treated similarly situated white people differently. The Court agrees. "To state an equal protection claim, a plaintiff must adequately *plead* that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment . . . targets a suspect class . . . ." *Center for Bio-Ethical Reform*, 648 F.3d at 379 (internal quotation and citation omitted) (emphasis added). At most, Daniels has pleaded that WPD issued a "relatively high number of traffic citations . . . to a relatively high number of non whites[,]" but that allegation is vague and conclusory. (Doc. 9 at PageID 87.) The Amended Class Action Complaint is devoid of statistical or anecdotal allegations of fact regarding more favorable treatment accorded to white individuals. Accordingly, the Court must dismiss the equal protection claim implicitly asserted against Officer Riggs. *See Center for Bio-*

11

*Ethical Reform*, 648 F.3d at 379 (dismissing an equal protection claim due to "the absence of any plausible allegation of disparate treatment").

Next, Daniels asserts a failure to train, instruct, or supervise claim against the City of Wyoming, City Manager Tetley, and Chief Baldauf. A municipality is "liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Respondeat superior is not available as a theory of recovery under § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Therefore, a plaintiff seeking to subject a municipality to § 1983 liability for the actions of its officers must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy this requirement in several ways. First, he may show that some official policy—"made by its lawmakers or by those whose edicts may fairly be said to represent official policy"—was a "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694–95. Alternatively, he may show that the officers acted pursuant to some unofficial policy or custom that, while never "formally approved by an appropriate decisionmaker," is nevertheless "so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Monell*, 436 U.S. at 690–91. A policy of inadequate training or supervision can be the policy or custom sufficient to state a constitutional violation claim against a municipal corporation. *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015), *petition for certiorari filed*, No. 15-852 (Dec. 30, 2015).

Daniels has failed to plead that the City of Wyoming had a policy or custom of inadequate training or supervision which led to a violation of Daniels's constitutional rights. He has pleaded no facts concerning the training or supervision provided to WPD police officers. In the absence of allegations explaining how the training or supervision was inadequate, and how

12

the inadequate training or supervision directly led to a violation of Daniels's rights, Daniels has not stated a plausible claim against the City of Wyoming. The Court will dismiss the failure to train, instruct, or supervise claim.

Finally, Daniels asserts a state law claim for intentional infliction of emotional distress. The Court *sua sponte* will dismiss this claim. The Ohio Supreme Court recognized the tort of intentional infliction of serious emotional distress in *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 670–71 (1983), *overruled on other grounds*, *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 866 N.E.2d 1051, 1054 (2007). The Sixth Circuit reduced the tort into these four elements: "(1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citations omitted).

The Ohio Supreme Court articulated the essence of "extreme and outrageous" conduct as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Yeager*, 453 N.E.2d at 671 (quoting Restatement (Second) of Torts § 46(1) cmt. d (1965)). Applying this authority, the Court concludes that Daniels has not pleaded any conduct that is extreme and outrageous. Not all traffic stops constituting a Fourth Amendment or equal

13

protection violation also give rise to an intentional infliction of emotional distress claim. Daniels has not alleged any facts here which would elevate the alleged constitutional claim to one regarded as atrocious and utterly intolerable. Further, Daniels's bare conclusory allegation that he "suffered psychological damage" is not sufficient to state a claim that he suffered emotional anguish that is severe and debilitating. *See Lavelle v. Sines*, No. 2:11-cv-693, 2012 U.S. Dist. Lexis 312, at \*23–24 (S.D. Ohio Jan. 3, 2012) (explaining the mental anguish element); *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759, 765 (1983).

To summarize, the Court has concluded that Daniels has stated only a Fourth Amendment claim upon which relief can be granted against Officer Riggs. Only Officer Riggs participated in the December 2013 traffic stop. The allegations against the other Defendants in their individual capacities are not sufficient to state claims upon which relief can be granted. Officer Mike World is accused of not permitting Daniels to file a complaint after Officer World witnessed an assault against him. Daniels pleads only sparse facts about this incident, not enough to raise an inference of racial discrimination under the Equal Protection Clause. Similarly, regarding Chief Baldauf, Daniels pleads that he left Chief Baldauf a phone message, but did not talk to him. Daniels has not explained how this allegation supports a constitutional claim or state tort. Next, Daniels pleads that Officer Banker and Officer Berigan took actions against non-parties Nico Jenkins and Damien Lee Johnson, but he cannot assert claims on their behalf. Absent a class action, Daniels cannot assert claims to remedy harms to third parties. *See Wuliger v. Mfr. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (stating that "a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties"). Finally, Daniels pleads no facts concerning any actions taken by City Manager Tetley that would give rise to a claim against her.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 12) is **GRANTED IN PART AND DENIED IN PART.**  The Court dismisses all claims against the City of Wyoming, the Wyoming Police Department, City Manager Lynn Tetley, Chief Gary Baldauf, Officer Mike World, Officer Brian Berigan, and Officer Jeffrey Banker.  The Court further dismisses the due process, equal protection, and intentional infliction of emotional distress claims against Officer Tom Riggs.  Additionally, the Court strikes the class allegations in the Amended Class Action Complaint.  However, the Court does not dismiss Daniels's claims against Officer Tom Riggs for a violation of his rights under the Fourth Amendment.

Finally, for the sake of clarity, the Court orders that Daniels file a Second Amended Complaint deleting the class allegations and the dismissed claims within three weeks of the date of this Order.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court