UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| QUINCY C. DANIELS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WYOMING, ET AL.,<br><br>Defendants. | 1:15-CV-00507<br><br>DISTRICT JUDGE SUSAN J. DLOTT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 49). Plaintiff Quincy C. Daniels asserts a claim for violation of his Fourth Amendment and Fourteenth Amendment rights against Defendant Tom Riggs, a police officer with the City of Wyoming, Ohio, arising from a traffic stop. Daniels asserts that the traffic stop was illegal because it was racially motivated. Officer Riggs moves for summary judgment on the grounds that he did not violate Daniels's constitutional rights and that he is entitled to qualified immunity as a matter of law. For the reasons that follow, the Court will **GRANT** the Motion for Summary Judgment.

I. **BACKGROUND**

A. **Factual History**

The following facts are derived, except where specifically noted otherwise, from Defendant's Proposed Undisputed Facts (Doc. 49-1) and Plaintiff's Responses (Doc. 54) thereto. On December 26, 2013, Daniels, an African-American, and his companion, Glenda Smith, spent the evening together at a Broadway show. Just after 8:00 p.m. that night, Daniels drove with Smith towards Smith's residence in Wyoming, Ohio in his recently acquired 2014 Cadillac CTS. Daniels obtained the vehicle in November 2013 from Fairfield Cadillac in Fairfield, Ohio. The

1

vehicle displayed temporary license plates from the dealer which had expired on December 16, 2013.

Officer Riggs has filed a dash camera video to support his recitation of the facts. The video system in the cruiser is set to record and save from one minute prior to the time that the cruiser lights are activated. (Riggs Dep., Doc. 48 at PageID 564.) The video is authenticated by Rusty Herzog, the Wyoming Chief of Police, and contains both a time-of-day clock and an event timer that starts starts at 0:00 and counts up to 7:08 minutes. (Herzog Aff., Doc. 49-2 at PageID 644; Video.)[1] Daniels's attorney notes that the video provided to Daniels in discovery and used in the deposition had only an event timer. The event timer in the dash camera video filed with the Court matches the timing of events set forth by Daniels in his Proposed Statement of the Facts. (Doc. 53.) Thus, the Court will use the event timer in this recitation of the facts.

When the dash camera video begins, Daniels and Smith were travelling north on Springfield Pike in the left lane towards Smith's residence. Officer Riggs was travelling 2–3 car lengths behind Daniels's vehicle in the right lane until both vehicles stopped for a traffic light with Officer Riggs's cruiser next to Daniels's vehicle. (Video 0:00–0:16.) Daniels and Smith testified that Officer Riggs made eye contact with them while stopped for the traffic light. (Smith Dep., Doc. 47 at PageID 517–18; Daniels Dep., Doc. 46 at PageID 433–34.) After the cars accelerated from the light, Officer Riggs drove next to or ahead of Daniels's vehicle for approximately 15 seconds, and then he switched into the left lane behind Daniels's vehicle. (Video 0:28–0:59.) Officer Riggs put on his vehicle flashing lights to effectuate a traffic stop at the one minute mark in the dash cam video. (Video 1:00.) Daniels then turned left at the next intersection onto Ritchie Avenue and parked his car on the side of the road to comply. (Video

---

[1] Notice of the filing of the video DVD is at Doc. 50.

1:15–1:20.)

At some point after he encountered Daniels's vehicle on Springfield Pike, Officer Riggs ran the temporary license plate number from the computer in his cruiser. He had noticed that the license plate number appeared to be altered on the temporary tag. (Riggs Dep., Doc. 48 at PageID 573.) The electronic record from the police cruiser indicates that he ran the license plate number at 8:16 p.m. (Doc. 49-2 at PageID 651.) That same electronic record indicates that Officer Riggs informed the police dispatcher about the traffic stop at 8:18 p.m. (Doc. 49-2 at PageID 652.) Riggs testified that the license plate issue was the only reason that he pulled over Daniels's vehicle. (Riggs Dep., Doc. 48 at PageID 561.) Officer Riggs "radioed" the numbers of the license plate to the police dispatcher for the first time on Ritchie Avenue or just before he turned onto Ritchie Avenue. (*Id.* at PageID 585; Audio at TStop 12-26 B.)[2]

After the vehicles had pulled over on Ritchie Avenue, Officer Riggs approached Daniels and informed him that his license plate was expired and that the date written on it appeared to have been altered. Daniels provided Officer Riggs with his driver's license and registration at Officer Riggs's request. Officer Riggs returned to his cruiser to check the documents. He then returned the items to Daniels, reiterated that the license plate was expired, and suggested that Daniels contact the dealership about the license plate expiration. Officer Riggs did not issue Daniels a traffic citation. The traffic stop concluded and Daniels drove away. (Video 6:17.)

Additionally, Daniels presents evidence that from December 2012 through December 2013 Officer Riggs issued tickets to more black individuals than to white individuals. (Doc. 48 at PageID 598–622.)[3]

---

[2] Notice of the filing of the audio tape is at Doc. 55.
[3] Counsel for Daniels asked Officer Riggs during his deposition to assume that the records established that Officer Riggs issued twenty-four tickets to black individuals and eighteen tickets

3

**B.     Procedural Posture**

Daniels initiated this suit on July 31, 2015 against the City of Wyoming, Ohio; Lynn Tetley, the Wyoming City Manager; the Wyoming Police Department; and Chief Gary Baldauf, Officer Tom Riggs, Officer Mike World, Officer Brian Berigan, and Officer Jeffrey Banker of the Wyoming Police Department.  (Doc. 1.)  He filed a [First] Amended Class Action Complaint on September 3, 2015 after Defendants had moved to dismiss the initial Complaint.  (Docs. 8, 9.)  Daniels sought to assert claims on behalf of a class of other non-white citizens stopped by the Wyoming Police Department because of their ethnicity.  He asserted five claims: (1) unlawful stop in violation of the Fourth and Fourteenth Amendment; (2) failure to train, instruct, or supervise in violation of the Fourth and Fourteenth Amendments; (3) denial of substantive due process in violation of the Fourteenth Amendment; (4) denial of procedural due process in violation of the Fourteenth Amendment; and (5) intentional infliction of emotional distress.  (Doc. 9 at PageID 87–89.)  The Court assumed that Daniels also intended to assert an equal protection claim because he alleged that Defendants stopped him and the prospective class members on the basis of their race.  (*Id.* at PageID 84–87; Doc. 28 at PageID 329.)

Defendants moved to dismiss the [First] Amended Class Action Complaint in its entirety.  (Doc. 12.)  On February 10, 2016, the Court issued an Order dismissing all claims against the City of Wyoming, City Manager Tetley, the Wyoming Police Department, Chief Baldauf, Officers World, Berigan, and Banker.  (Doc. 28 at PageID 340.)  The Court also struck the class action allegations.  Finally, the Court dismissed the due process, equal protection, and intentional

---

to white individuals.  (Riggs Dep., Doc. 48 at PageID 587.)  The Court's tally was slightly different, but the Court also counted more tickets given to black individuals.  (Doc. 48 at PageID 598–622.)  The slight discrepancy is not unexpected as the quality of the printouts is poor and some notations are difficult to read.

infliction of emotional distress claims against Officer Riggs.  (*Id.*)  The Court did not dismiss the claims against Officer Riggs for a violation of Daniels's rights under the Fourth Amendment.  (*Id.* at PageID 340.)  Finally, the Court instructed Daniels, for the sake of clarity, to file a Second Amended Complaint deleting the class allegations and the dismissed claims.  (*Id.*)

Daniels timely filed the Second Amended Complaint on February 26, 2016.  (Doc. 31.)  He asserts one claim alleging he "was stopped, detained, and interrogated because of his race" in violation of the Fourth and Fourteenth Amendments.  (*Id.* at PageID 346.)  Officer Riggs now moves for summary judgment on this sole remaining claim.

## II.     STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the burden to show that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  A court's task is not "to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. ANALYSIS

To begin, the Court reminds the parties that in the Order dated February 10, 2016 it dismissed Daniels's implicit racial profiling claim against Officer Riggs and the other Defendants. (Doc. 28 at PageID 335–37, 340.) The Court recognized that individuals "subjected to unequal treatment based upon their race or ethnicity during the course of an otherwise lawful traffic stop . . . [can] demonstrate a violation of the Equal Protection Clause." *Farm Labor Organizing Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533 (6th Cir. 2002). However, to state an equal protection claim, Daniels would have had to "adequately *plead* that the government [officer] treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment . . . targets a suspect class . . . ." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation and citation omitted) (emphasis added). Daniels alleged only one incident of wrongdoing by Officer Riggs in the [First] Amended Complaint—the traffic stop of Daniels by Officer Riggs in December 2013. He made no allegations of fact that Officer Riggs *in particular* treated white drivers differently. Daniels's allegation that the "WPD [Wyoming Police Department] issued a relatively high number of traffic citations on a two mile stretch, [*sic*] to a relatively high number of non whites" was too vague to state a claim against Officer Riggs for race discrimination. (*Id.* at PageID 336; Doc. 9 at PageID 87.) The Court concluded that the [First] Amended Class Action Complaint

was "devoid of statistical or anecdotal allegations of fact regarding more favorable treatment accorded to white individuals" and, accordingly, dismissed the equal protection claim. (Doc. 28 at PageID 336.) Daniels did not have leave to re-assert an equal protection claim against Officer Riggs in the Second Amended Complaint. Therefore, the Court will proceed to analyze only the claim that Officer Riggs unlawfully stopped and detained Daniels in violation of the Fourth Amendment.

Daniels contends that Officer Riggs stopped him without legal justification, as evidenced by the fact that Officer Riggs did not issue him a traffic citation. "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *U.S. v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

The Fourth Amendment requires that a traffic stop "not be 'unreasonable' under the circumstances." *Whren v. U.S.*, 517 U.S. 806, 810 (1996). However, the constitutional reasonableness of a traffic stop under the Fourth Amendment does not depend upon the "actual motivations of the individual officers involved." *Id.* at 813.[4] A police officer may stop a car with probable cause to believe a civil traffic infraction has occurred or with reasonable suspicion of ongoing criminal activity. *Blair*, 524 F.3d at 748, 750; *see also U.S. v. Huff*, 630 F. App'x 471, 495 (6th Cir. 2015) (Barrett, J., concurring).[5] More specifically, "an officer may, consistent with the Fourth Amendment, lawfully stop a motorist whom he or she has probable cause to believe committed a traffic violation, including driving with expired tags, regardless of the officer's actual motivation for doing so." *U.S. v. Marshall*, 233 F. App'x 436, 439 (6th Cir.

---

[4] Selective enforcement of the law based on considerations of race is a violation of the Equal Protection Clause, *see id.*, but Daniels's equal protection claim has been dismissed for inadequate pleading.

[5] "Whether the police may stop a vehicle based on mere reasonable suspicion of a civil traffic violation is the subject of a conflict in our [Sixth Circuit] case law." *Blair*, 524 F.3d at 753.

2007).  Therefore, Daniels's proffered evidence that Officer Riggs made eye contact with him at an intersection stop, knew he was black, and issued tickets to more black drivers than white drivers from December 2012 to December 2013 is irrelevant to the objective determination of whether Officer Riggs had probable cause to pull over Daniels on the night in question.

      Daniels concedes that he was driving a vehicle with an expired license plate on December 26, 2013 when he was pulled over by Officer Riggs.  He challenges only whether Officer Riggs had probable cause to believe that the license plate was expired prior to initiating the traffic stop. He argues that the facts are disputed whether Officer Riggs had sufficient time to determine that the license plate was expired based on the dash camera video.  He suggests that Officer Riggs had only ten seconds to observe the license plate.  He also relies on the audio recording and Officer Riggs's testimony that he did not radio in the license plate number until he was on Ritchie Avenue, the side street where Daniels pulled over his vehicle.

      The Court disagrees and finds that the there are no *material* facts in dispute.  First, the dash camera video is inconclusive as to how long Officer Riggs drove behind Daniels's vehicle because the camera system captured only sixty seconds prior to the time Officer Riggs turned on his cruiser lights.  In the video, Officer Riggs travelled behind Daniels's vehicle for approximately 23 seconds before he turned on his cruiser lights to initiate the traffic stop. (Video 0:00–0:10, 0:47–1:00.)  Second, Officer Riggs testified that he "ran a query on the temporary tag in the computer in the car."  (Riggs Dep., Doc. 48 at PageID 573.)  His testimony is supported by the electronic record of the communications made from the police cruiser. Officer Riggs completed the license plate query at 8:16 p.m. and informed the dispatcher about the traffic stop on Ritchie Avenue at 8:18 p.m.  (Herzog Aff., Doc. 49-2 at PageID 651–52.) Third, Officer Riggs told Daniels during the traffic stop when he first approached Daniels's

vehicle, and before he returned to the cruiser with Daniels's license and registration, that when he "run it [the license plate] through the system, it shows it expired on the 16th." (Video 3:25–3:31.) This statement suggests that Officer Riggs had checked the license plate before he stopped the vehicle. It is irrelevant then that Officer Riggs did not radio the police station about the expired license plate until he was stopping or had stopped on Ritchie Avenue.

In sum, because the material undisputed evidence establishes that Officer Riggs had probable cause to pull over Daniels for the traffic violation of driving with an expired license plate, Officer Riggs did not violate Daniels's Fourth Amendment rights. *See Marshall*, 233 F. App'x at 439 (stating that an officer can stop a motorist driving with expired tags consistent with the Fourth Amendment). Moreover, Officer Riggs is entitled to qualified immunity as a matter of law. *See Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (stating that qualified immunity is applicable if the official's conduct did not violate a clearly established right).

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED**.

DATED this 10 th day of January, 2017.

BY THE COURT:

S/Susan J. Dlott
SUSAN J. DLOTT
United States District Judge